# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

BMO BANK, N.A.,

Plaintiff,

v.

BULLET CARRIER INC., et al.,

Defendant.

Case No. 1:26-cv-04671-EGC

**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT AS TO COUNTS ONE & TWO AND ORDERING A WRIT OF POSSESSION ISSUE**

(Doc. 11)

## I. INTRODUCTION

On September 11, 2026, Plaintiff BMO Bank N.A. ("Plaintiff") filed a motion for default judgment (the "Motion") against Defendants Bullet Carrier Inc. ("Bullet Carrier"), and Inderjeet Singh (collectively "Defendants"). (Doc. 11). No opposition to Plaintiff's motion was filed. The Court has reviewed the motion and supporting documentation and determines that the matter is suitable for decision without oral argument pursuant to Local Rule 230(g). As such, the hearing on the motion set for October 28, 2026, shall be VACATED.

For the reasons set forth below, the Court will grant Plaintiff's motion for default judgment and order a writ of possession issue.

## II. FACTUAL BACKGROUND

On June 17, 2026, Plaintiff filed their complaint against Defendants alleging claims of breach of contract. (Doc. 1). Defendants were served with summons and the complaint on June 18, 2026. (Doc. 3). The summons were returned executed on July 22, 2026, indicating service on Defendants on July 13, 2026. (Docs. 5, 6).

Plaintiff's claims in their Complaint arise from several alleged written contracts in the form of loan and security agreements related to three vehicles: (1) Agreement 4001, (2) Agreement 5001, and (3) Agreement 6001 ("the Agreements"), in addition to a contract as to a "continuing guaranty." (Doc. 1 ¶¶ 10–18; *see also id.* at 42–76[1]). Plaintiff alleges that Defendant Singh "executed in writing Continuing Guaranties" and was therefore indebted to Plaintiff for "all sums due under the Agreements." (*Id.* ¶¶ 14–15). Plaintiff further alleges that pursuant to these agreements, Defendant Bullet Carriers, for their part, was required to make regular monthly payments. (*Id.* ¶ 19). Additionally, Plaintiff alleges the Agreements provided for acceleration of the balance on the Agreements and payment in full in the event Defendants failed to make their required payments under the Agreements. (*Id.* ¶¶ 19–20). Because Plaintiff alleges they perfected their first-priority security interest in the three vehicles, they allege that they were entitled to recover those vehicles upon Defendants non-payment. (*Id.* ¶¶ 17, 21).

Plaintiff alleges Defendant Bullet Carriers ceased making payments under each of the Agreements, that on May 21, 2026 Plaintiff accelerated and declared the entire remaining balances under the agreement as due, (*id.* ¶¶ 26, 32, 38), and now—in light of Defendants' non-payment—they allege that under the terms of the Agreement, Defendants owe Plaintiff the following sums:

1. A principal balance of $38,877.19 under Agreement 4001;
2. Late fees pursuant to the terms of Agreement 4001 in the amount of $308.16;
3. Interest in the amount of $448.95 up through the date of acceleration, May 21, 2026, plus interest in the amount of 18% per annum (the acceleration rate) from May 21, 2026 through the date of judgment;
4. Attorney's fees associated with the costs of this litigation under the terms of Agreement 4001;
5. A principal balance of $71,526.51 under Agreement 5001;

---

[1] The Court will take judicial notice of the Agreements, as attached to the Complaint, (Doc. 1 at 13–41). *See United Specialty Ins. Co. v. Certain Underwriters at Lloyd's of London*, No. 18-CV-07504-SK, 2019 WL 7810813, at *2 (N.D. Cal. Mar. 19, 2019) ("The Court takes judicial notice of the [contract] because it is integral to the allegations presented in the Complaint and because neither party disputes its authenticity . . . . In the context of breach of contract cases, '[j]udicial notice of contracts is proper when contracts are integral to the complaint and no party disputes the contracts' identity and accuracy.'" (quoting *Am. Zurich Ins. Co. v. Country Villa Serv. Corp.*, No. CV 14-3779 RSWL, 2014 WL 12588687, at *4 (C.D. Cal. Oct. 2, 2014))).

6. Late fees pursuant to the terms of Agreement 5001 in the amount of $533.65, NSF charges of $50.00, plus other such charges to be incurred according to proof;

7. Interest in the amount of $784.64 up through the date of acceleration, May 21, 2026, plus interest in the amount of 18% per annum (the acceleration rate) from May 21, 2026 through the date of judgment;

8. Attorney's fees associated with the costs of this litigation under the terms of Agreement 5001;

9. A principal balance of $183,256.47 under Agreement 6001;

10. Late fees pursuant to the terms of Agreement 6001 in the amount of $1,294.14 NSF charges of $100.00, plus other such charges to be incurred according to proof;

11. Interest in the amount of $1,965.33 up through the date of acceleration, May 21, 2026, plus interest in the amount of 18% per annum (the acceleration rate) from May 21, 2026 through the date of judgment;

12. Attorney's fees associated with the costs of this litigation under the terms of Agreement 6001;

(*Id.* ¶¶ 24–41).

Defendants were served with the Complaint on July 13, 2026. (Docs. 5, 6). Neither Defendant responded to the Complaint. (*See* Docket). Plaintiff requested that the Clerk of Court enter default against Defendants on August 26, 2026 and default was entered the next day. (Docs. 8, 9). On September 11, 2026, Plaintiff filed a motion for default judgment against Defendants, which is currently pending before Court. (Doc. 11). Defendants did not respond to the motion. (*See* Docket).

## III. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a). It is within the sole discretion of the court as to whether default judgment should be entered. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default by itself does not entitle a plaintiff to a court-ordered

judgment. *See id.* Instead, the Ninth Circuit has determined a court should consider seven discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). The *Eitel* factors include (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See id.*

Once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

**B. Analysis**

**1. The *Eitel* Factors Weigh in Favor of Granting a Default Judgment**

a. <u>Possibility of Prejudice to Plaintiff</u>

The first *Eitel* factor requires a court to consider the possibility of prejudice to a plaintiff. *See Eitel*, 782 F.2d at 1471. The Court finds that if default judgment is not entered, Plaintiff will effectively be denied a remedy until Defendants participate and make an appearance in the litigation—which may never occur. Denying Plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor. *See Bmo Bank N.A. v. Bring Transp. Inc*., No. 1:24-CV-00809-KES-EPG, 2025 WL 2611852, at *3 (E.D. Cal. Sept. 10, 2025) ("If default judgment is not entered, Plaintiff will effectively be denied relief, as it is apparent that Defendants will not defend this action and the Complaint alleges that Defendants are in default of the unpaid amounts owed to Plaintiff under the terms of the agreement and corresponding guaranty."), *report and recommendation adopted sub nom. BMO Bank N.A. v. Bring Transp. Inc.*, No. 1:24-CV-00809-KES-EPG, 2025 WL 3004099 (E.D. Cal. Oct. 27, 2025). Therefore, the Court finds that Plaintiff would be prejudiced if the Court were to deny its motion and this factor weighs in favor of default judgment.

b. Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The next *Eitel* factor includes an evaluation of the merits of the substantive claims pleaded in the complaint and the general sufficiency of the complaint. *See Eitel*, 782 F.2d at 1471. In weighing these factors, courts evaluate whether the complaint is sufficient to state a claim that supports the relief sought. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.").

Before evaluating the merits of the substantive claims and sufficiency of the Complaint, the Court notes that the parties' contract contains a choice of law provision for Illinois law. (*See* Doc. 1 at 19, 26–27, 34 ("Anything in this Agreement to the contrary notwithstanding, the transactions contemplated by this Agreement shall be deemed approved and entered into within ·the State of Illinois and all credit or other financial accommodations extended by Lender under this Agreement shall be deemed extended from and subject to the laws of the State of Illinois (without regard to the conflicts of law principles of such State) regardless of the location of Debtor or any of the Equipment.")). Federal courts sitting in diversity generally apply the substantive law of the forum state. *E.g.*, *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983). This includes the forum's choice-of-law rules, *id.*, and California law generally enforces contractual choice-of-law terms. *E.g.*, *Smith, Valentino & Smith, Inc. v. Superior Court*, 551 P.2d 1206 (Cal. 1976) (In Banc); *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1028 (9th Cir. 2016). Therefore, the Court will apply Illinois law as to Plaintiff's contract claims.

Turning to Plaintiff's breach of contract claims—specifically count one against Defendant Bullet Carrier and count two against Defendant Singh—the elements of breach of contract under Illinois law are "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Sherwood Commons Townhome Owners Ass'n, Inc. v. Dubois*, 148 N.E.3d 900, 912 (Ill. App. Ct. 2020) (quoting *Henderson-Smith & Assocs., Inc. v. Nahamani Fam. Serv. Ctr., Inc.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001)). The Court finds that Plaintiff has alleged sufficient facts for a claim for breach of contract against Defendants.

As alleged in Plaintiff's Complaint, Plaintiff and Defendants agreed to certain terms contained in three loans and security agreements and the guaranty agreement that are alleged to be valid contracts, Plaintiff performed its obligations, Defendants failed to make required installment payments or the balance upon acceleration as they were obligated by the Agreements, and Plaintiff suffered damages as a result of the breach. (*See* Doc. 1 ¶¶ 10–41).

The Complaint therefore sufficiently sets forth Plaintiff's claims for breach of contract against both Defendants, and there appears to be merit to the substantive allegations. *See Bmo Bank N.A.*, 2025 WL 2611852, at *3; *Christofferson v. All Pure Pool Serv. of Cent. Cal., Inc.*, No. 118CV01370AWISAB, 2020 WL 3249323, at *14 (E.D. Cal. June 16, 2020), *report and recommendation adopted sub nom.* No. 118CV01370AWISAB, 2020 WL 3819413 (E.D. Cal. July 8, 2020).

The Court therefore finds that the second and third *Eitel* factors are satisfied as to the breach of contract claims and weigh in favor of default. *See, e.g.*, *Rolex Watch U.S.A., Inc. v. Watch Empire LLC*, No. CV1309221SJOFFMX, 2015 WL 9690322, at *3 (C.D. Cal. Sept. 29, 2015) (stating that the second and third *Eitel* factors together "require that a plaintiff state a claim on which the plaintiff may recover" (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002))).

c. The Sum of Money at Stake in the Action

The fourth *Eitel* factor requires the court to consider the sum of money at stake. *See Eitel*, 782 F.2d at 1471. The Court acknowledges that "[d]efault judgment is disfavored when a large amount of money is involved or is unreasonable considering the defendant's actions." *See Moore v. Cisneros*, No. 1:12-CV-00188-LJO, 2012 WL 6523017, at *4 (E.D. Cal. Dec. 13, 2012). However, as will be discussed in detail below, Plaintiff requests a total of $333,423.82—which includes the remaining principal of the loan amount, interest, costs, and fees. (*See* Doc. 11 at 14–15). The Court finds this amount is not excessive as it is based upon Defendants' obligations under the terms of the Agreement.

Accordingly, the Court finds that the fourth *Eitel* factor weighs in favor of granting default judgment.

d. The Possibility of a Dispute Concerning the Material Facts

The fifth *Eitel* factor is whether there is a possibility of a dispute concerning the material facts. *See Eitel*, 782 F.2d at 1471–72. Regarding this factor, the Court finds that no genuine issues of material fact are likely to exist because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917–18, and Defendants have submitted nothing to contradict the well-pleaded allegations in the complaint. *See United Specialty Insurance Co. v. Saleh*, No. 1:16-cv-00632-DAD-MJS, 2016 WL 4434479, at *2 (E.D. Cal. Aug. 22, 2016) ("Inasmuch as default serves as an admission of Plaintiff's well-pled allegations of fact, it must be concluded that there is no dispute as to any material fact.") (internal citation omitted). Accordingly, the Court finds this factor favors entry of default judgment.

e. Whether Default Was Due to Excusable Neglect

The sixth *Eitel* factor requires a court to evaluate whether the default of Defendants was due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Defendants failed to file responsive pleadings or oppose Plaintiff's motion for default judgment. Therefore, the Court has no evidence before it to demonstrate Defendants' failure to participate in the litigation is due to excusable neglect. *See Protective Life Ins. Co. v. Phillips*, No. CIV S-08-0035 JAM EFB, 2008 WL 4104284, at *3 (E.D. Cal. Aug. 26, 2008) (stating that a defendant's "failure to respond cannot be deemed 'excusable neglect'"). Thus, the Court finds that this factor also weighs in favor of granting default judgment.

f. Policy Favoring Decision on the Merits

The final *Eitel* factor requires a court to take into account the policy that default judgments are disfavored because "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "the policy favoring decisions on the merits does not weigh against entering default judgment where, as here, the Defendants' failure to appear has made a decision on the merits impossible at this juncture." *Arroyo v. J.S.T. LLC*, No. 1:18-CV-01682-DAD-SAB, 2019 WL 4877573, at *11 (E.D. Cal. Oct. 3, 2019), *report and recommendation adopted*, 2020 WL 32322 (E.D. Cal. Jan. 2, 2020). Accordingly, the Court finds that the seventh *Eitel* factor does not preclude default judgment.

* * *

In sum, six of the *Eitel* factors weigh in favor of default judgment, while the seventh factor does not weigh in favor—but does not preclude or weigh against—default judgment. For these reasons, the Court will grant Plaintiff's Motion for Default Judgment, (Doc. 11), to the extent Plaintiff requests that the Court enter default judgment against Defendants Bullet Carriers and Singh on Plaintiff's breach of contract claims, counts one and two and order that a Writ of Possession issue.

**2. Terms of the Judgment and Proof of Relief**

The Court next turns to the damages requested by Plaintiff. "A plaintiff seeking default judgment 'must . . . prove all damages sought in the complaint.'" *HICA Educ. Loan Corp. v. Warne*, No. 11-CV-04287-LHK, 2012 WL 1156402, at *4 (N.D. Cal. Apr. 6, 2012). Plaintiff's complaint seeks the unpaid principal, interest, various fees (including attorney's fees) and costs as well as writs of possession of the unrecovered vehicles. (Doc. 1 ¶ 77; *see also* Doc. 11 at 14–15).

Under Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The Complaint seeks "judgment in its favor and against [Bullet Carrier] in the amount due under the Agreements, the exact amount to be proven at or before trial, plus its attorneys' fees, costs, late fees and interest, and a judgment for possession of the vehicles, together with such other and further relief as shall be just and equitable," (Doc. 1 ¶ 46), and "a judgment in its favor and against [Singh] in the amount due under the Guaranties the exact amount to be proven at or before trial, plus its attorneys' fees, costs, late fees and interest, together with such other and further relief as shall be just and equitable," (*id.* ¶ 51). The Complaint also seeks "the issuance of writs of possession be entered in favor of Plaintiff granting Plaintiff possession of the vehicles." (*Id.* at 12).

In determining the appropriate sum for a default judgment, a court may rely on the affidavits or documentary evidence submitted by a plaintiff or order an evidentiary hearing. *See* Fed. R. Civ. P. 55(b)(2); *Microsoft Corp. v. Nop*, 549 F.Supp.2d 1233, 1235 (E.D. Cal. 2008) ("Where damages are liquidated (*i.e.*, capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits), judgment by default may be entered without a damages hearing." (citation omitted)).

The Agreements entered by the parties provide the following relevant terms:

**SECURITY INTEREST.** Debtor hereby grants to Lender a first priority security interest in the Equipment to secure (a) payment of the Total Amount and all other obligations or Debtor to Lender under this Agreement, (b) the payment and performance of all other debts, liabilities and obligations of Debtor of every kind and character, whether now existing or hereafter arising, to Lender, whether under this Agreement or any other agreement, and (c) the payment and performance of all debts, liabilities and obligations of Debtor of *every* kind and character, whether now existing or hereafter arising, to each of Lender's Affiliates.

**RETURNED PAYMENTS.** If a check, draft or other remittance sent by Debtor or a Debit Transaction authorized by Debtor is returned unpaid or rejected for any reason other than the lack of a proper endorsement by Lender, the application of such payment to Debtor's Liabilities will be reversed and Debtor shall immediately pay Lender the amount of such returned payment plus any delinquency charge accruing as the result of such reversal. Debtor shall further pay Lender any amount charged to Lender by any depositary institution because of such return and an additional handling charge in the amount of $25, or if applicable law limits or restricts the amount of such reimbursement and/or handling charge, the amounts chargeable under this provision will be limited and/or restricted in accordance with applicable law.

**EVENTS OF DEFAULT**. Time is of the essence. An event of default shall occur if: (a) Debtor fails to pay when due any amount owed by it to Lender or any Affiliate of Lender under this Agreement; (b) Debtor or a Guarantor fails to pay any Liabilities when due to Lender or any Affiliate of Lender or is otherwise in default under any other document, agreement or instrument . . .

**REMEDIES**. Upon the occurrence of an event of default, and at any time thereafter as long as the default continues, Lender may, at its option, with or without notice to Debtor (i) declare this Agreement to be in default, (ii) declare the indebtedness hereunder to be immediately due and payable, (iii) declare all other debts then owing by Debtor to Lender lo be immediately due and payable, and (iv) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Debtor to assemble the Equipment and deliver it to Lender at a place to be designated by Lender and to enter any premises where the Equipment may be without judicial process and take possession thereof. Any property other than Equipment that is in or upon the Equipment at the time of repossession may be taken and held without liability. Any requirement that Lender give reasonable notice regarding the sale or other disposition of Equipment will be met if such notice is mailed to Debtor at its last known address at least ten days before such sale or other disposition. Lender may dispose of any Equipment at a public or private sale or at auction. Lender may buy at any sale and become the owner of the Equipment. Debtor agrees that Lender may bring legal proceedings to enforce the payment and performance of Debtor's obligations hereunder in any court in the State shown in Lender's address set forth herein, and service of process may be made upon Debtor by mailing a copy of the summons for Debtor at its address shown herein. Debtor shall also pay to Lender all expenses of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees of any attorneys retained by lender, and (b) all other legal expenses incurred by Lender. Debtor agrees that Debtor is liable for any deficiency remaining after any disposition or Equipment after default. Lender may sell the Equipment without giving any warranties as to the Equipment. Lender may disclaim any warranties of title, possession, quiet enjoyment, or the like. This procedure will

> not be considered to adversely affect the commercial reasonableness of any sale of the Equipment.
>
> **ACCELERATION INTEREST.** Debtor agrees to pay Lender, upon acceleration of the above indebtedness, interest on all sums then owing hereunder at the rate of 1 1/2% per month if not prohibited by law, otherwise at the highest rate Debtor can legally obligate itself to pay or Lender can legally collect under applicable law.
>
> **GOVERNING LAW / CHOICE OF VENUE.** Anything in this Agreement to the contrary notwithstanding, the transactions contemplated by this Agreement shall be deemed approved and entered into within the State of Illinois and all credit or other financial accommodations extended by Lender under this Agreement shall be deemed extended from and subject to the laws of the State of Illinois (without regard to the conflicts of law principles of such State) regardless of the location of Debtor or any of the Equipment. Any legal action or proceeding with respect to this Agreement or the transactions contemplated by this Agreement shall be brought exclusively in the federal or state courts located in Cook County, Illinois, and Debtor accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts; *provided, however,* that nothing in this Agreement shall limit or restrict the right of Lender to commence any proceeding in the federal or state courts located in the state in which the Equipment is located to the extent Lender deems such proceeding necessary or advisable to exercise remedies available under this Agreement or to commence legal proceedings or otherwise proceed against Debtor in any other Jurisdiction. Lender and Debtor hereby irrevocably waive any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens that any of them may now or hereafter have to the bringing of any such action or proceeding in such jurisdictions.

(Doc. 1 at 17–19, 24–26, 32–34).

Additionally, the Agreements include the following interest rates associated with each Agreement's corresponding payment schedules:

1. Agreement 4001: 13.86% per annum, (*id.* ¶ 26)
2. Agreement 5001: 13.16% per annum, (*id.* ¶ 32)
3. Agreement 6001: 12.87% per annum, (*id.* ¶ 38)

a. <u>Damages</u>

Both Plaintiff's complaint and motion for default judgment seek damages. (Doc. 1 ¶¶ 46, 51; *see also* Doc. 14 at 14–15). Generally, "[t]he proper measure of damages for a breach of contract is the amount of money necessary to place the plaintiff in a position as if the contract had been performed." *In re Illinois Bell Tel. Link-Up II*, 994 N.E.2d 553, 558 (Ill. App. Ct. 2013). Moreover, while the Illinois Interest Act limits the annual interest rate to which a borrower and lender may agree at 9%, there is an exception allowing for borrowers and lenders to agree to any annual interest rates on business loans, *see* 815 Ill. Comp. Stat. 205/4(1) ("It is lawful to charge, contract for, and

receive any rate or amount of interest or compensation . . . with respect to . . . any business loan to a business association or copartnership or to a person owning and operating a business as sole proprietor or to any persons owning and operating a business"). The Court finds the business loan exception applies here, and, therefore, the Court finds that the Agreements' term setting a 1.5% monthly interest rate (which converts to an 18% annual interest rate) to all sums upon the acceleration of the indebtedness under the Agreement on June 1, 2026 is not contrary to Illinois law.

The following table illustrates the monetary relief sought in this case.[2]

| Agreement | Description | Amount |
|---|---|---|
| Agreement 4001 | Principal | $38,877.19 |
| | Late Fees | $308.16 |
| | Pre-Acceleration Interest (at a rate of 13.86%) | $448.95 |
| | Post-Acceleration Interest (at a rate of 18%) | $19.44 per day |
| Agreement 5001 | Principal | $71,526.51 |
| | Late Fees & NSF Charges | $583.65 |
| | Pre-Acceleration Interest (at a rate of 13.16%) | $2,092.00 |
| | Post-Acceleration Interest (at a rate of 18%) | $35.76 per day |
| Agreement 6001 | Principal | $183,256.47 |
| | Late Fees & NSF Charges | $1,394.14 |
| | Pre-Acceleration Interest (at a rate of 12.87%) | $9,171.40 |
| | Post-Acceleration Interest (at a rate of 18%) | $91.63 per day |
| | **Total** | **$307,658.47** (plus daily interest rates) |

The Court will address the request for attorney's fees ($4,472.00) and costs ($741.48) separately below.

The Court finds that Plaintiff has adequately identified the specific amount of damages requested and provided sufficient declarations and other documentation to meet its burden of establishing the amount of damages requested. The combined principal amount of $293,660.17, combined late fees and NSF charges of $2,285.95, pre-acceleration interest in the amount of $11,712.35, and post-acceleration interest at a rate of $146.83 per day after May 21, 2026, are all supported by the declaration of Whitney Oliver and the Agreements. (*See* Doc 1 at 15–37; Doc.

[2] The remaining principal takes into account any payments made by Defendants before the loans were accelerated for non-payment.

12). Accordingly, the Court will grant Plaintiff's requests for the combined principal amount of $293,660.17, combined late fees and NSF charges of $2,285.95, pre-acceleration interest in the amount of $11,712.35, and post-acceleration interest at a rate of $146.83 per day after May 21, 2026.

b. Attorney's Fees

Plaintiff seeks attorney's fees in the amount of $4,472.00 for work performed at a rate of $325.00 per hour of attorney Jennifer Witherell Crastz's time. (*See* Doc. 11 at 15; Doc. 13 at 9–13). In support of the fee request, Plaintiff submits the declaration of Attorney Crastz. (*See* Doc. 13).

In a diversity action, federal law governs procedural questions and state law governs substantive questions. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). Because this is a diversity case and "state law on attorney's fees is substantive" for *Erie* purposes, for the same reasons cited above as to the application of Illinois law to Plaintiff's substantive claims, Illinois law applies in determining the substance of any attorney's fees. *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 973 (9th Cir. 2013); *see Nedlloyd Lines B.V. v. Superior Ct.*, 834 P.2d 1148, 1155 (Cal. 1992). ("For the reasons stated above, we hold a valid choice-of-law clause, which provides that a specified body of law "governs" the "agreement" between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized.").

In the present case, the Court observes that the Agreements provide for attorney's fees. (*See* Doc. 1 at 18, 25, 33 ("Debtor shall also pay to Lender all expenses of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees of any attorneys retained by lender, and (b) all other legal expenses incurred by Lender.")).

Under Illinois law, provisions in contracts for awards of attorney's fees are permissible, however, only those fees which are reasonable are allowed and the determination of reasonableness is left to the trial court's discretion. *Kaiser v. MEPC Am. Props., Inc.*, 518 N.E.2d 424, 427 (Ill. App. Ct. 1987). The burden is on the part of the party seeking the fees to present the court with sufficient evidence from which it can determine the reasonableness of the fees. *Id.* A party attempting to justify a fee must show more than a compilation of hours multiplied by a fixed hourly rate, or copies of the bills issued to the client, because this data, alone, does not provide sufficient

information as to reasonableness. *Id.* A determination of reasonableness cannot be made on the basis of conjecture or on the opinion or conclusions of the attorney seeking the fees. *Id.* A fee petition must specify "the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor." *Id.* The party seeking fees, then, must present the court with "detailed records maintained during the course of litigation containing facts and computations upon which the charges are predicated." *Id.* at 427–28.

The Court finds that the records provided by Plaintiff here are adequately detailed in that they reflect number of hours spent on this matter with corresponding descriptions of the work performed during those hours. (*See* Doc. 13 at 9–13); *see also Cont'l W. Ins. Co. v. Country Mut. Ins. Co.*, No. 3:17-CV-1231-NJR-GCS, 2020 WL 5441113, at *5 (S.D. Ill. Sept. 10, 2020) ("each entry included a description of the work performed, the attorney's name, the amount of time spent, and the hourly rate charged. That is all that is required under Illinois law"), *aff'd*, 3 F.4th 308 (7th Cir. 2021); *In re Marriage of Yelton*, 676 N.E.2d 993, 998 (Ill. App. Ct. 1997) ("Our review of the record reveals that the timesheets included a concise explanation of the work undertaken and services performed, as well as the name, amount of time, and hourly rate of the attorneys involved. Therefore, the trial court properly admitted them.").

In addition to a party's detailed records, in determining an award of attorney's fees, under Illinois law, the trial court should consider additional factors,

> [T]he skill and standing of the attorneys, the nature of the case, the novelty and/or difficulty of the issues and work involved, the importance of the matter, the degree of responsibility required, the unusual and customary charges for comparable services, the benefit to the client [citation omitted], and whether there is a reasonable connection between the fees and the amount involved in the litigation.

*Kaiser*, 518 N.E.2d at 428.

With these principles in mind, the Court observes that Attorney Crastz's declaration states that she has been licensed to practice law in California since 1996 "working in the areas of complex business and commercial litigation for almost 30 years," (Doc. 16 at 3), and is a partner at the Law Offices of Hemar, Rousso & Heald, LLP, (*id.* at 2). The Court also finds that this case is a relatively simple and straightforward contract dispute, in which Plaintiff achieved success early in the litigation. The Court also observes that the requested rates of $325 for Attorney Crastz is in line

with the hourly rates awarded in the Eastern District for comparable services. *See Bmo Bank N.A. v. Bring Transp. Inc*, 2025 WL 2611852, at *8. The Court also finds that upon review of the fee request and associated offer of proof; there is a reasonable connection between the fees requested and the amount involved in the litigation. Accordingly, the Court will approve the requested figure—$4,472.00—as Plaintiff's total recoverable attorney's fees for this matter.

c. Litigation Expenses and Costs

Plaintiff also seeks a total of $741.48 in costs, which consists of the filing fee and service of process. (Doc. 11 at 15). Unlike the issue of attorney's fees, which are governed by state law, "the award of costs is governed by federal law under Rule 54(d)." *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n.2 (9th Cir. 1987); *see, e.g.*, *United States v. Safeco Ins. Co. of Am.*, 116 F.3d 487, at *2 (9th Cir. 1997) ("As a general proposition, an award of costs is governed by federal law under Rule 54(d)." (citations omitted)); *United Cal. Bank v. THC Fin. Corp.*, 557 F.2d 1351, 1361 (9th Cir. 1977) (applying federal law as to costs and California state law on the issue of attorney's fees); *Bmo Harris Bank N.A. v. Singh*, Case No. 1:16-cv-00482-DAD-SAB, 2016 WL 5798841, at *14 (E.D. Cal. Oct. 4, 2016) ("In a diversity action, federal not state law controls the issue of costs." (citing *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167 (9th Cir. 1995))); *Am. Boat Racing Ass'n v. Richards*, No. 2:14–cv–1909–KJM–KJN, 2015 WL 1320956, at *8 (E.D. Cal. Mar. 24, 2015) ("[F]ederal law governs the award of costs even in a diversity action." (citing *DCI Sols. Inc. v. Urban Outfitters, Inc.*, No. 10cv0369–IEG (BGS), 2012 WL 1409610, at *2 (S.D. Cal. Apr. 23, 2012))). 28 U.S.C. § 1920 "define[s] the full extent of a federal court's power to shift litigation costs absent express statutory authority." *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 579 (9th Cir. 2010) (citation omitted). The costs that are taxable under Section 1920 "are limited to relatively minor, incidental expenses," including "clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012).

Plaintiff requests reimbursement in the amount of $741.48 for the following costs: (1) $405.00 paid for the filing of the complaint, (2) $210.24 spent on the service of process on Defendant Bullet Carrier, and (3) $126.24 spent on the service of process on Defendant Singh. (Doc. 13 at 5).

"[B]ecause federal law permits the court filing fee and service of process expenses to be recovered as costs," the Court will award Plaintiff the requested $741.48 in costs. *See Am. Boat Racing Ass'n v.*, 2015 WL 1320956, at *8; *see also*, *e.g.*, *Direct Connect Logistix, Inc. v. Road Kings Trucking Inc.*, Case No. 1:16-cv-01006-AWI-SKO, 2016 WL 6608924, at *10 (E.D. Cal. Nov. 9, 2016) ("The costs associated with filing this action and serving [the defendants] are properly recoverable by [the plaintiff]." (citations omitted)); *Family Tree Farms, LLC v. Alfa Quality Produce, Inc.*, No. 1:08–cv–00481–AWI–SMS, 2009 WL 565568, at *10 (E.D. Cal. Mar. 5, 2009) ("Marshal's fees and fees for service by a person other than the Marshal under [Federal Rule of Civil Procedure] may be recovered; private process servers' fees are properly taxed as costs." (citing *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 178 (9th Cir. 1990))).

d. Writs of Possession

Plaintiff also seeks an order for possession of the vehicles. (Doc. 11 at 14). "At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). Although the Agreements are governed by the laws of Illinois, the choice-of-law provision does not displace Federal Rule of Civil Procedure 64, *see Edgen Murray Corp. v. Vortex Marine Constr., Inc.*, 2018 WL 6786264, at *2 (N.D. Cal. Dec. 18, 2018) (collecting cases); *see also Dealer Comput. Servs., Inc. v. Monarch Ford*, No. 12-01970, 2013 WL 314337, at *3 (E.D. Cal. Jan. 25, 2013) ("When a writ of attachment is sought in California, California law governs whether the writ may issue, even if the parties have agreed that the law of another jurisdiction shall govern interpretation of their agreement."). Thus, California law applies here.

California law provides for provisional return of property via writ of possession. Cal. Civ. Proc. Code § 512.010(a). In an application for a writ of possession, a plaintiff must show: (1) "the basis of the plaintiff's claim and that the plaintiff is entitled to possession of the property claimed"; (2) "the property is wrongfully detained by the defendant"; (3) "[a] particular description of the property and a statement of its value"; (4) "the location of the property"; and (5) "the property has not been taken for a tax, assessment, or fine . . . or seized." *Id.* § 512.010(b). A writ of possession

shall issue if "(1) [t]he plaintiff has established the probable validity of the plaintiff's claim to possession of the property [and] (2) [t]he undertaking requirements of Section 515.010 are satisfied." *Id.* § 512.060.

In consideration for entering into the Agreements, Defendants granted a first-priority security interest in the vehicles, and Plaintiff perfected its security interest by recording its lien on the Certificates of Title. (Doc. 1 ¶ 18; *id.* at 43–52). Therefore, the Court finds that Plaintiff is entitled to possession of the vehicles. *See Wells Fargo Equip. Fin., Inc. v. Virk Sys., Inc.*, No. 2:20-CV-0143 TLN DB, 2021 WL 347408, at *5 (E.D. Cal. Feb. 2, 2021) (collecting cases where courts granted possession where entitlement to possession was established). Upon recovery and sale of the subject vehicles in a commercially reasonable manner, Plaintiff will be ordered to credit the net sale proceeds of the vehicles toward the monetary judgment awarded herein. Plaintiff is not entitled to a double recovery.

## IV. CONCLUSION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, it is HEREBY ORDERED that the hearing on Plaintiff's motion for default judgment, (Doc. 11), set for October 28, 2026. 2026, is VACATED. The Court further ORDERS that:

1. Plaintiff's motion for default judgment (Doc. 14), is GRANTED insofar as Plaintiff requests that the Court enter default judgment against Defendants Bullet Carriers Inc. and Inderjeet Singh as to counts one and two of the complaint;
2. Judgment is entered against Defendants Bullet Carriers Inc. and Inderjeet Singh in the amount of $307,658.47, plus additional interest being awarded at the rate of $146.83 per day after May 21, 2026;
3. Plaintiff is AWARDED possession of the subject vehicles, and Defendants SHALL return and/or permit Plaintiff to take possession of the subject vehicles:

| Agreement # | Year | Make / Model | Vehicle I.D. / Serial No. |
|---|---|---|---|
| 4001 | 2001 | Freightliner Cascadia-Series Sleeper Tractor 6X4 | 3AKJHHDR2MSMG8829 |
| 5001 | 2022 | Freightliner Cascadia-Series Sleeper Tractor 6X4 | 3AKJHHDR2NSNB8761 |
| 6001 | 2023<br>2022 | CIMC Reefer<br>Thermo King S-600 | 527SR5321PL027461<br>6001360439 |

| | | | |
|---|---|---|---|
| | 2023<br>2022 | CIMC Reefer<br>Thermo King S-600 | 527SR5322PL028327<br>6001361587 |
| | 2023<br>2022 | CIMC Reefer<br>Thermo King S-600 | 527SR5327PL028324<br>6001360455 |

4. Upon recovery and sale of the subject vehicles in a commercially reasonable manner, Plaintiff SHALL credit the net sale proceeds of the vehicles toward the monetary judgment awarded herein.

5. Attorney's fees to Plaintiff are AWARDED in the amount of $4,472.00;

6. Costs are AWARDED to Plaintiff in the amount of $741.48.

Furthermore, Plaintiff is HEREBY ORDERED to mail a copy of this order to each of the Defendants at Defendants' last known addresses.

The Clerk of Court is DIRECTED to close this case.

IT IS SO ORDERED.

Dated: **September 29, 2026**

[signature]

UNITED STATES MAGISTRATE JUDGE